# 15-2240-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤ ◄◄

NICHOLAS L. O'GRADY,

*Plaintiff-Appellant,*

*v.*

BLUECREST CAPITAL MANAGEMENT LLP,

*Defendant-Appellee.*

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## BRIEF FOR DEFENDANT-APPELLEE

Anthony P. Alden
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
213-443-3000

Maya D. Cater
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
212-849-7000

*Attorneys for Defendant-Appellee*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee BlueCrest Capital Management LLP states that it is a limited liability partnership, it has no parent corporation, and none of its principals are publicly-held corporations.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF THE CASE .........................................................................4

      A.    Mr. O'Grady's Employment By BlueCrest ...........................................4

      B.    Mr. O'Grady Was Terminated On Or Around June 4, 2014 ...............7

      C.    The Instant Lawsuit ................................................................................8

      D.    The District Court's Decision .................................................................9

SUMMARY OF ARGUMENT ........................................................................9

STANDARD OF REVIEW ............................................................................11

ARGUMENT ................................................................................................12

I.     THE DISTRICT COURT CORRECTLY FOUND THAT THE
      EMPLOYMENT AGREEMENT BARS MR. O'GRADY'S CLAIM
      FOR A BONUS PAYMENT .......................................................................12

      A.    The Employment Agreement States Bonus Payments Are
            Within BlueCrest's "Sole And Absolute Discretion" .........................12

      B.    The Employment Agreement Conditions Mr. O'Grady's
            Eligibility To Receive A Bonus On Active Employment ..................15

      C.    Mr. O'Grady's Discretionary, Unearned Bonus Was Not A
            "Wage" Under New York Labor Law .................................................17

      D.    None Of Mr. O'Grady's Remaining Arguments Saves His
            Claims ...................................................................................................20

II.    THE DISTRICT COURT CORRECTLY FOUND THAT MR.
      O'GRADY'S EMPLOYMENT AGREEMENT BARS HIS CLAIMS
      FOR SEVERANCE PAY ............................................................................25

CONCLUSION .............................................................................................27

ii

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................11

*Bader v. Wells Fargo Home Mortg. Inc.*,
  773 F. Supp. 2d 397 (S.D.N.Y. 2011) .................................................19

*Baraliu v. Vinya Capital, L.P.*,
  No. 07-CV-4626, 2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) ..........16

*Bayer v. Oxford Univ. Press*,
  270 A.D. 586 (1st Dep't 1946)...........................................................24

*Beacon Terminal Corp. v. Chemprene, Inc.*,
  75 A.D.2d 350 (2d Dep't 1980) ..........................................................23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................11

*Bessemer Trust Co., N.A. v. Branin*,
  618 F.3d 76 (2d Cir. 2010) .................................................................13

*Bethlehem Steel Co. v. Turner Constr. Co.*,
  2 N.Y.2d 456 (1957)...........................................................................15

*Brennan v. J.P. Morgan Secs., Inc.*,
  7 Misc. 3d 1013(A) 2004 WL 3314910 (N.Y. Sup. Ct. 2004).............24

*Conley v. Gibson*,
  355 U.S. 41 (1957) .............................................................................11

*Doolittle v. Nixon Peabody LLP*,
  126 A.D.3d 1519 (4th Dep't 2015) .....................................................13

*Hunter v. Deutsche Bank AG, N.Y. Branch*,
  56 A.D.3d 274 (1st Dep't 2008)..........................................................13

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991) ...............................................................19

*In re Bankers Trust Co.*,
    450 F.3d 121 (2d Cir. 2006) .................................................................26

*Int'l Paper Co. v. Suwyn*,
    978 F. Supp. 506 (S.D.N.Y. 1997) .....................................................17

*Johnson v. Stanfield Capital Partners, LLC*,
    68 A.D.3d 628 (1st Dep't 2009) ..........................................................16

*Kaplan v. Capital Co. of Am. LLC*,
    298 A.D.2d 110 (1st Dep't 2002) ........................................................14

*Karmilowicz v. Hartford Fin. Servs. Grp.*
    494 F. App'x 153 (2d Cir. 2012) ...................................... 12, 13, 16, 19

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
    No. 11-CV-0539, 2011 WL 2936013 (S.D.N.Y. July 14, 2011) ................. 12, 14

*Klein & Co. Futures, Inc. v. Bd. of Trade*,
    464 F.3d 255 (2d Cir. 2006) .................................................................11

*Kolchins v. Evolution Markets, Inc.*,
    128 A.D.3d 47 (1st Dep't 2015) ..........................................................20

*Lucente v. Int'l Bus. Mach. Corp.*,
    310 F.3d 243 (2d Cir. 2002) .................................................................26

*Marine Midland Bank S. v. Thurlow*,
    53 N.Y.2d 381 (1981) ...........................................................................21

*Modugu v. Continuum Health Partners, Inc.*,
    3 A.D.3d 422 (1st Dep't 2004) ............................................................19

*Namad v. Salomon Inc.*,
    74 N.Y.2d 751 (1989) ..................................................................... passim

*O'Grady v. BlueCrest Capital Mgmt. LLP*,
    No. 15-CV-1108, 2015 WL 3740701, --- F. Supp. 3d --- (S.D.N.Y. June 15, 2015) ..............................................................................................2

*Patel v. Baluch's Indian Rest.*,
    No. 08-CV-9985, 2009 WL 2358620 (S.D.N.Y. July 30, 2009) .........16

*Reilly v. NatWest Mkts. Group*,
    181 F.3d 253 (2d Cir. 1999) ................................................................20

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) ..................................................................12

*Ryan v. Kellogg Partners Institutional Servs.*,
    19 N.Y.3d 1 (2012) ...................................................................... 18, 20

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
    959 F.2d 425 (2d Cir. 1992) ................................................................15

*Smalley v. Dreyfus Corp.*,
    10 N.Y.3d 55 (2008) ............................................................................14

*Smalley v. Dreyfus Corp.*,
    40 A.D.3d 99 (1st Dep't 2007) ............................................................13

*Smith v. Railworks Corp.*,
    No. 10-CV-3980, 2011 WL 2016293 (S.D.N.Y. May 17, 2011) .........14

*Tischmann v. ITT/Sheraton Corp.*,
    145 F.3d 561 (2d Cir. 1998) ................................................................27

*Town of Babylon v. Fed. Hous. Fin. Agency*,
    699 F.3d 221 (2d Cir. 2012) ................................................................11

*Truelove v. Ne. Capital & Advisory, Inc.*,
    95 N.Y.2d 220 (2000) ................................................................ 16, 18, 19

*Wilson v. Merrill Lynch & Co., Inc.*,
    671 F.3d 120 (2d Cir. 2011) ................................................................12

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ................................................................26

*Zolotar v. New York Life Ins. Co.*,
    576 N.Y.S.2d 850 (1st Dep't 1991) .....................................................16

## **STATUTES**

Fed. R. Civ. P. 12(b)(6) .......................................................... 2, 8, 11, 26

Fed. R. Civ. P. 9(c) ........................................................................8, 25

New York Labor Law § 190(1) ...........................................................18

New York Labor Law § 193 ...........................................................8, 9

## <u>OTHER AUTHORITIES</u>

4 Williston, Contracts §§ 631, 632A (3d ed. 1961) ................................21

## PRELIMINARY STATEMENT

The appeal filed by Plaintiff-Appellant Nicholas O'Grady, a former employee of Defendant-Appellee BlueCrest,[1] follows a well-worn path. Mr. O'Grady was employed by BlueCrest from December 2, 2013, until he was terminated around June 4, 2014. The terms of his employment, including his compensation, were contained in a written employment agreement (the "Employment Agreement"), which Mr. O'Grady signed. According to his Employment Agreement, Mr. O'Grady was entitled to an annual base salary of $250,000 per year and, as long as he remained employed at BlueCrest, he was eligible to participate in any bonus programs BlueCrest might establish. The Employment Agreement made clear that any bonus awards would be paid in BlueCrest's "*sole and absolute discretion*," and expressly conditioned Mr. O'Grady's eligibility to receive a bonus on active employment at the time of payment.

---

[1] The Complaint named BlueCrest Capital Management LLP as the Defendant in this action. However, Mr. O'Grady was not employed by BlueCrest Capital Management LLP. Rather, as clearly stated in his Employment Agreement, which was attached to his Complaint, A30, Mr. O'Grady was employed by BlueCrest USA GP, LLC, as general partner to BlueCrest Capital Management (New York) LP. As used herein, the term "BlueCrest" means either (a) the named Defendant, BlueCrest Capital Management LLP, or (b) Mr. O'Grady's actual former employer, BlueCrest USA GP, LLC, as the context requires.

Notwithstanding that any bonus award to Mr. O'Grady was entirely within BlueCrest's discretion, and notwithstanding that Mr. O'Grady's eligibility for a bonus ceased when he was terminated, Mr. O'Grady brought suit against BlueCrest, seeking approximately $1.3 million in bonus and severance payments based on an array of legal theories, including breach of contract and violations of New York Labor law. In view of the unambiguous terms of Mr. O'Grady's Employment Agreement, the U.S. District Court for the Southern District of New York (Stein, J.) properly dismissed Mr. O'Grady's Complaint under Federal Rule of Civil Procedure 12(b)(6) and entered judgment in BlueCrest's favor. A195-212 (*O'Grady v. BlueCrest Capital Mgmt. LLP*, No. 15-CV-1108, 2015 WL 3740701, --- F. Supp. 3d --- (S.D.N.Y. June 15, 2015)).

On appeal, Mr. O'Grady seeks to resurrect his Complaint by rewriting both the Complaint and his Employment Agreement. These efforts fail and the judgment should be affirmed.

*First*, under New York law, an employee cannot assert a breach of contract claim to recover a discretionary bonus. Section 3 of Mr. O'Grady's Employment Agreement states in black and white that "[a]ny bonus program established and awards made pursuant thereto" will be subject to BlueCrest's "sole and absolute discretion." A30. Mr. O'Grady argues that BlueCrest did not have discretion to *award* a bonus, rather only to *establish* a bonus program. This is demonstrably

2

false: the Employment Agreement plainly stated that "[a]ny bonus program established *and awards made pursuant thereto*" were discretionary. A30 (emphasis added).

*Second*, the Employment Agreement expressly stated that Mr. O'Grady "will not be eligible to be paid any bonus if at any time prior to the date of any payment . . . [his] employment has been terminated." A30. As Mr. O'Grady concedes in his Complaint, his employment ended on or around June 4, 2014, A18, which was more than six months before the bonus he seeks would potentially have been paid.

*Finally*, while Mr. O'Grady asserts that he is entitled to "severance" pay, Section 5.4 of the Employment Agreement requires Mr. O'Grady to have signed a release as a condition to any "severance" payment. A31. Mr. O'Grady does not allege (and he concededly cannot allege) that such a release was signed. For these reasons, and those discussed below, the District Court's judgment should be affirmed.

## COUNTER-STATEMENT OF THE ISSUES

1. Did the District Court correctly dismiss Mr. O'Grady's claims for a bonus payment where the unambiguous terms of his Employment Agreement stated that bonuses were awarded in the sole and absolute discretion of BlueCrest and that active employment was a condition precedent to receiving an award?

2.    Did the District Court correctly dismiss Mr. O'Grady's claims for a severance payment where Mr. O'Grady failed to allege that he signed a release, which the Employment Agreement defined as an express condition to BlueCrest's obligation to pay?

## STATEMENT OF THE CASE

### A.    Mr. O'Grady's Employment By BlueCrest

Mr. O'Grady was employed by BlueCrest as a Portfolio Manager in the U.S. Equities division from December 2, 2013, until he was terminated on or around June 4, 2014.  A14 (¶ 43), A18 (¶ 53).  The terms of his employment, including his compensation, were set forth in full in the Employment Agreement, which Mr. O'Grady signed on November 7, 2013.  A37–38.  Under Section 2 of his Employment Agreement, Mr. O'Grady was entitled to a "Base Salary" of $250,000 per year, payable *pro rata* on a semi-monthly basis.  A30.

Pursuant to Section 3 of the Employment Agreement, Mr. O'Grady was "eligible to participate in any bonus programs [BlueCrest] may decide to establish from time to time," subject to the provisions of the applicable bonus program. A30.  Section 3 further states that "[a]ny bonus program established and awards made pursuant thereto by [BlueCrest] will be subject to [BlueCrest's] sole and absolute discretion."  *Id*.

Prior to executing the Employment Agreement, BlueCrest provided Mr. O'Grady with an example of a potential bonus structure entitled, "Equities Compensation Model – Illustrative Guidelines" (the "Guidelines"). A40, A97-8. Under the Guidelines, Mr. O'Grady and his team of analysts were eligible to be considered for an annual bonus, subject to BlueCrest's sole and absolute discretion, taking into consideration the annual net profits Mr. O'Grady's team generated for BlueCrest (if any) during the previous calendar year. A40, A98.[2] The Guidelines, which were provided to Mr. O'Grady by way of illustration only, stated specifically that: "No reliance should be placed on any information or representation contained" in the Guidelines; "no liability of any type will be incurred with regard to such information or representation by . . . any member of the BlueCrest group of entities" with respect to the Guidelines; and that "[t]he rights of all employees . . . will remain at all times strictly subject to review and approval in accordance with the terms of the applicable employment agreement . . . which has neither been varied nor modified by anything set out herein." A40, A98.

To be eligible for a bonus, the Employment Agreement required Mr. O'Grady to be employed by BlueCrest at the time such bonus was paid. A30.

---

[2]   If BlueCrest decided to pay employee bonuses (either to a specific individual or more generally), they were typically paid in part to similarly-situated employees during the first quarter of the year following the performance year to which they related, with the remainder subject to future deferral and vesting conditions.

Section 3 specifically states that "you will not be eligible to be paid any bonus if at any time prior to the date of any payment . . . your employment has been terminated." A30.

Section 5 of the Employment Agreement prescribes the three ways that Mr. O'Grady's employment could be terminated, and thus his eligibility to be considered for a bonus forfeited:

- 5.1 Voluntary Termination. Mr. O'Grady could voluntarily terminate his employment at any time upon three months' prior written notice to BlueCrest.
- 5.2 Termination for Cause. BlueCrest could terminate Mr. O'Grady for "cause." The Employment Agreement defined "cause" to include, among other things, Mr. O'Grady's "failure to comply with any policy or guidelines or procedures of BlueCrest, as identified from time to time."
- 5.3 Termination Without Cause. BlueCrest could terminate Mr. O'Grady's employment without cause upon one month's prior written notice.

A31.

Pursuant to Section 5.4 of the Employment Agreement, if Mr. O'Grady's employment terminated under Sections 5.1 (voluntary termination) or 5.3 (termination without cause), Mr. O'Grady was "entitled to receive [his] Base Salary and any employee benefits . . . accrued, but unpaid, through [his] termination date." A31. In the event of "such termination, and in lieu of any notice required, [BlueCrest] may, in its absolute discretion, terminate [Mr. O'Grady's] employment immediately (or at any time during the notice period) and

6

make a lump sum payment equivalent to [his] Base Salary through the end of the notice period . . . provided that [he] execute a valid and irrevocable release agreement in a form acceptable to [BlueCrest]."  A31.  It is undisputed that Mr. O'Grady received the accrued but unpaid portion of his Base Salary through his termination date.

In Section 21 of the Employment Agreement, Mr. O'Grady agreed that the terms of the Agreement set forth the "entire understanding between [the parties] with respect to the subject of [Mr. O'Grady's] employment and supersedes all prior or contemporaneous understandings, agreements and negotiations on that subject." A37.  Mr. O'Grady further agreed that BlueCrest "made no representations . . . regarding the kind, character or existence of work or the compensation that you will receive for such work other than as set forth in this Agreement," and that the Agreement "may be amended or modified only by a written instrument signed by both Parties."  A37.

### B.    Mr. O'Grady Was Terminated On Or Around June 4, 2014

BlueCrest terminated Mr. O'Grady's employment on or around June 4, 2014, A18 (¶ 53), after discovering numerous violations of company policies. A62–64.  On June 6, 2014, BlueCrest sent Mr. O'Grady a formal letter terminating the Employment Agreement.  A110.  The termination letter stated, "[p]ursuant to Section 5.2 of the [Employment Agreement] your employment was terminated for

Cause effective June 5, 2014." A110. Mr. O'Grady does not dispute that he received the termination letter. Nevertheless, Mr. O'Grady continues to represent to the Court that he was terminated "without" cause. A18 (¶ 53); O'Grady Br. at 9-10.

### C.    The Instant Lawsuit

On February 17, 2015, Mr. O'Grady filed a Complaint against BlueCrest seeking so-called "Accrued Obligations" consisting of a $1,284,652 bonus payment and another $20,833 in "severance." A6–28. His Complaint sought payment based on seven separate legal theories:  breach of contract (Count I); breach of implied contract (Count II); unjust enrichment (Count III); promissory estoppel (Count IV); breach of the implied covenant of good faith and fair dealing (Count V); violation of New York Labor Law § 193 (Count VI); and an accounting (Count VII). A19–25.

On April 8, 2015, BlueCrest filed a Motion to Dismiss pursuant to Rules 9(c) and 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the Complaint was barred by the express terms of Mr. O'Grady's written Employment Agreement, which was attached to the Complaint. A47–48. Specifically, BlueCrest argued that Mr. O'Grady's claims were barred by Section 3 of the Employment Agreement, which vests in BlueCrest the "sole and absolute discretion" to pay a bonus, and expressly conditions Mr. O'Grady's eligibility to

8

receive such bonus on active employment at the time the bonus is paid. A58. BlueCrest also argued that, even assuming Mr. O'Grady was terminated "without cause," he fails to allege he satisfied a condition precedent to receiving a severance payment—the execution of a release. A59. Finally, BlueCrest argued that each of Mr. O'Grady's quasi-contract and tort claims were barred by the existence of the parties' written agreement and fatally deficient in any event, and that Mr. O'Grady failed to allege that his bonus was a "wage" under New York Labor Law. A59.

### D. The District Court's Decision

On June 15, 2015, the District Court granted BlueCrest's Motion in its entirety and dismissed each of Mr. O'Grady's claims. A195–210. The District Court found that "the plain terms of O'Grady's employment contract foreclose his breach of contract and New York Labor Law claims, and his quasi-contract claims are impermissibly duplicative of his breach of contract claim." A195. Judgment was entered in BlueCrest's favor on June 17, 2015. A211. Mr. O'Grady's appeal followed.

### SUMMARY OF ARGUMENT

While Mr. O'Grady's Complaint asserts that he is "entitled" to a bonus and severance payment, it fails to identify a single provision in the Employment Agreement that supports this assertion. On the contrary, the Employment Agreement expressly states that Mr. O'Grady is *not* entitled to the payments he

seeks.  Accordingly, the Court should affirm the judgment entered by the District Court.

*First*, Section 3 of Mr. O'Grady's Employment Agreement states that "[a]ny bonus program established and awards made pursuant thereto by [BlueCrest] will be subject to [BlueCrest's] sole and absolute discretion."  It is black-letter law that an employee cannot state a breach of contract claim for an employer's decision not to award a bonus where the employment agreement vests the employer with the sole and absolute discretion whether to pay the bonus.

*Second*, Section 3 of Mr. O'Grady's Employment Agreement expressly states that he "will not be eligible to be paid any bonus if at any time prior to the date of any payment . . . [his] employment has been terminated."  As Mr. O'Grady concedes in his Complaint, his employment ended on or around June 4, 2014, which was "prior to the date of any payment" to which Mr. O'Grady claims he is entitled.

*Finally*, Section 5.4 of Mr. O'Grady's Employment Agreement states that, in the event Mr. O'Grady is terminated without cause, BlueCrest may, in lieu of any notice required, terminate his employment immediately and pay Mr. O'Grady a lump sum equal to one month's salary, "provided that [he] execute[s] a valid and irrevocable release agreement in a form acceptable to the Company."  Mr. O'Grady does not allege, nor can he, that such release was signed.  Thus, Mr.

O'Grady fails to allege that he was entitled to the severance pay he seeks, and his claim for severance pay was properly dismissed.

## STANDARD OF REVIEW

A district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo.  See Town of Babylon v. Fed. Hous. Fin. Agency,* 699 F.3d 221, 227 (2d Cir. 2012).  Dismissal will be affirmed where the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do "naked assertion[s] devoid of further factual enhancement."  *Id.* (alteration in original) (internal quotation marks omitted).  Where claims have not been "nudged . . . across the line from conceivable to plausible," dismissal is appropriate. *Twombly*, 550 U.S. at 570.

---

[3]   As he did in opposition below, Mr. O'Grady improperly invokes the "no set of facts" pleading standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957) (O'Grady Br. at 12), which was abrogated by *Twombly*. *See* 550 U.S. at 561–63 (stating that to survive dismissal, a plaintiff's pleading must "state a claim to relief that is plausible on its face" and dismissing a complaint that was merely "conceivable").

In reaching its decision, the Court may consider "any statements or documents incorporated in [the complaint] by reference, as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). While a complaint's allegations are accepted as true, *Wilson v. Merrill Lynch & Co., Inc*., 671 F.3d 120, 128 (2d Cir. 2011), where a written agreement contradicts a plaintiff's claims, the agreement's "clear language—not the complaint's allegations—prevails." *Karmilowicz v. Hartford Fin. Servs. Grp.*, No. 11-CV-0539, 2011 WL 2936013, at *7 (S.D.N.Y. July 14, 2011), *aff'd*, 494 F. App'x 153 (2d Cir. 2012) (summary order).

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY FOUND THAT THE EMPLOYMENT AGREEMENT BARS MR. O'GRADY'S CLAIM FOR A BONUS PAYMENT

#### A. The Employment Agreement States Bonus Payments Are Within BlueCrest's "Sole And Absolute Discretion"

Section 3 of Mr. O'Grady's Employment Agreement states that "[a]ny bonus program established and awards made pursuant thereto by [BlueCrest] will be subject to [BlueCrest's] sole and absolute discretion." A30. New York courts have repeatedly held that an employee cannot recover for breach of contract due to the employer's failure to pay a bonus where the "plan vests the employer with absolute discretion as to the entitlement and amount of any payments thereunder."

*Doolittle v. Nixon Peabody LLP*, 126 A.D.3d 1519, 1520 (4th Dep't 2015) (citations omitted).

In *Namad v. Salomon Inc.*, the New York Court of Appeals unanimously affirmed dismissal of an employee's breach of contract claim, stating that "the bonus clause [had] unambiguously vest[ed] discretion regarding the amount of bonus compensation to be awarded in defendants' management." 74 N.Y.2d 751, 752–53 (1989). Likewise, in *Bessemer Trust Co., N.A. v. Branin,* this Court affirmed in part dismissal of an employee's breach of contract claim where the contract expressly stated that any bonus to be awarded was "at the discretion of the Salary Committee." 618 F.3d 76, 90 (2d Cir. 2010). Similarly, in *Karmilowicz,* the Court unanimously affirmed dismissal of an employee's breach of contract claim where the contracts "expressly stated that potential payments were within the sole, absolute, and exclusive discretion" of the employer. 494 Fed. App'x at 157. And in *Hunter v. Deutsche Bank AG, N.Y. Branch*, the court found that "Plaintiffs' claims for breach of contract lack merit in view of the unambiguous language of their contracts and the employee handbook plainly making bonus awards solely and completely a matter of defendant's discretion." 56 A.D.3d 274, 274 (1st Dep't 2008).[4]

---

[4]   *See also Smalley v. Dreyfus Corp*., 40 A.D.3d 99, 106 (1st Dep't 2007) ("Handbook indicating that the defendants had the authority to 'modify or annul

Here, because the Employment Agreement gives BlueCrest "absolute discretion in deciding whether to pay the bonus," Mr. O'Grady has no contractual right to a bonus, and his breach of contract claim fails. *See Karmilowicz,* 2011 WL 2936013, at *7 (quoting *Smith v. Railworks Corp.*, No. 10-CV-3980, 2011 WL 2016293, at *3 (S.D.N.Y. May 17, 2011)).

Mr. O'Grady does not dispute this precedent, but instead urges a wholly implausible interpretation of the Employment Agreement. Mr. O'Grady argues that BlueCrest had discretion only to *establish* a bonus program, but once the bonus program was established, BlueCrest had no discretion as to whether to *award* bonuses under it. O'Grady Br. at 16. The problem with this argument is that it is contradicted by the Agreement's plain terms. The Employment Agreement states: "[a]ny bonus program established *and awards made pursuant thereto* by the Company will be subject to the Company's sole and absolute discretion." A30 (emphasis added).

---

any individual award, at their sole discretion, with or without notice, at any time' renders untenable the plaintiffs' claim for a portion of the performance fee.") *rev'd on other grounds*, 10 N.Y.3d 55 (2008); *Kaplan v. Capital Co. of Am. LLC*, 298 A.D.2d 110, 111 (1st Dep't 2002) ("Given the clearly expressed policy of the company that bonuses were to be paid solely at the company's discretion, and the provision requiring a writing executed by specified persons on the company's behalf to alter the terms of the employment relationship, plaintiff has no sustainable claim that defendant company entered into an enforceable agreement entitling him to bonus compensation.").

Mr. O'Grady cannot save his claims by urging a strained interpretation of the Employment Agreement that is directly at odds with its plain language. *See Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir. 1992) (ambiguity does not exist where one party's view "'strain[s] the contract language beyond its reasonable and ordinary meaning'" (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459 (1957)); *see also Namad* 74 N.Y.2d at 753 (rejecting an employee's interpretation of a bonus clause as obligating the defendants to pay plaintiff a fixed amount in accordance with "customary policy" because it would "render the previous sentence vesting defendants with complete discretion a nullity").

## B.     The Employment Agreement Conditions Mr. O'Grady's Eligibility To Receive A Bonus On Active Employment

Even if Mr. O'Grady's counter-textual reading of the Employment Agreement were plausible (and it is not), his claim still fails because Section 3 plainly conditions his eligibility to receive a bonus on active employment on the date the bonus is paid.  A30 ("You will not be eligible to be paid any bonus if at any time prior to the date of any payment . . . your employment has been terminated.").  As Mr. O'Grady concedes, he was terminated on or around June 4, 2014, months before the bonus he seeks would potentially have been paid.  A18 (¶ 53).

15

As the District Court correctly held, "[h]ere again, the plain terms of the Agreement foreclose his breach of contract claim." A202 (citing *Truelove v. Ne. Capital & Advisory, Inc.,* 95 N.Y.2d 220, 225 (2000) (where the plan predicated bonus payments "upon the recipient's continued employment status . . . [and the] plaintiff resigned shortly after he received his first quarterly payment, he was not entitled to receive the remaining three payments") and *Johnson v. Stanfield Capital Partners, LLC*, 68 A.D.3d 628, 628–29 (1st Dep't 2009) (affirming dismissal of employee's breach of contract claim, noting "the clear terms of the employment agreement preclude plaintiff from receiving any bonus, which was only determined at year-end, for the year 2006")); *see also Karmilowicz*, 494 F. App'x at 157 (affirming dismissal where the compensation plan "conditioned the receipt of any payment by mandating that only 'active employees . . . [with] continued employment through the payout date' are eligible to receive incentive awards"); *Zolotar v. New York Life Ins. Co.*, 172 A.D.2d 27, 32 (1st Dep't 1991) (enforcing condition precedent of continued employment against involuntarily terminated employee).[5]

_____

        [5]    *See also Patel v. Baluch's Indian Rest.,* No. 08-CV-9985, 2009 WL 2358620, at *8 (S.D.N.Y. July 30, 2009) (dismissing employee's breach of contract claim for failure to allege satisfaction of condition precedent); *Baraliu v. Vinya Capital, L.P.,* No. 07-CV-4626, 2009 WL 959578, at *5–6 (S.D.N.Y. Mar. 31, 2009) (dismissing breach of contract claim where conditions precedent, including continued employment, were unpled and unsatisfied); *Int'l Paper Co. v.*

## C. Mr. O'Grady's Discretionary, Unearned Bonus Was Not A "Wage" Under New York Labor Law

Mr. O'Grady does not dispute that the Employment Agreement expressly conditions his eligibility to receive a discretionary bonus on active employment at the time of payment, which, as Mr. O'Grady concedes, is a condition he is unable to satisfy. A18 (¶ 53). Mr. O'Grady argues, however, that the condition of active employment does not apply because his bonus was a non-forfeitable "wage" under New York Labor Law, and therefore "not subject to" the "unilateral forfeiture policies for discretionary bonus, even if O'Grady wsa [*sic*] not employed on the payment date." O'Grady Br. at 22. The sole basis for this argument is that, according to Mr. O'Grady, his bonus was based upon his "personal" performance, calculated as a percentage of his "personal" profits, and was therefore non-forfeitable. O'Grady Br. at 20. Mr. O'Grady's argument is baseless.

As an initial matter, the Employment Agreement says nothing of Mr. O'Grady's "personal" performance, nor his "personal" profits. A30 ("You will be eligible to participate in any bonus programs the Company may decide to establish from time to time to cover employees similarly situated to you, subject to the provisions of the applicable bonus program.").

---

*Suwyn*, 978 F. Supp. 506, 513 (S.D.N.Y. 1997) (dismissing claims for compensation where compensation plan canceled eligibility upon termination of employment).

17

Further, although Mr. O'Grady makes "much of the fact that his bonus payments, according to the Guidelines, were tied to his own performance," A209, "it is but one factor to consider in determining whether compensation qualifies as a wage." A209 (citing *Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 16 (2012). As the District Court explained, bonus compensation is not a "wage" unless the "compensation is *already 'earned' by the employee*." A209 (original emphasis) (citation omitted); *see also Truelove*, 95 N.Y.2d at 224 (defining "wages" as "earnings" for labor or services rendered and citing New York Labor Law § 190(1)). Where payment is discretionary, the bonus has not been "earned" and, therefore, is not a non-forfeitable "wage" under New York Labor Law. *See, Truelove*, 95 N.Y.2d at 224 (finding that "plaintiff's share in the bonus pool was entirely discretionary and subject to the non-reviewable determination of his employer," which "take[s] plaintiff's bonus payments out of the statutory definition of wages").

Here, as discussed above, Mr. O'Grady's Employment Agreement makes clear that the award of any bonus to him was entirely discretionary, A30, and Mr. O'Grady does not allege that his bonus was awarded or vested prior to his termination.[6] Because Mr. O'Grady's potential bonus was predicated entirely on

---

[6] Mr. O'Grady's assertion that he was "guaranteed" a bonus is based on a self-serving interpretation of one email. Mr. O'Grady attached the email to his

BlueCrest's discretion *and* active employment on the date of payment, "any bonus for 2014 had not yet been earned at the time of his termination."  A209 (citing *Bader v. Wells Fargo Home Mortg. Inc*., 773 F. Supp. 2d 397, 417–18 (S.D.N.Y. 2011) (collecting cases)).

Accordingly, Mr. O'Grady failed to allege that his bonus was a non-forfeitable wage.  *See Namad*, 74 N.Y.2d at 753 (the employee had no vested right in a bonus where the employment contract stated that "amounts of other compensation and entitlements, if any, including regular bonuses, special bonuses and stock awards, shall be at the discretion of the management consistent with the customary policy of the company"); *Modugu v. Continuum Health Partners, Inc.*, 3 A.D.3d 422, 423 (1st Dep't 2004) (finding the employee's bonus was not an earned wage where "the parties' agreement unambiguously provides that the practice group had the discretionary authority to decide if the supplemental salary is to be paid and how it is to be computed"); *cf. Reilly v. NatWest Mkts. Group*, 181

---

Complaint but included only one of its attachments, which does not even refer to guarantees.  A15 (¶ 47).  The attachment that actually refers to "guarantees" was not included, presumably because the corresponding columns are blank and listed separately from those columns which recommended the amounts discretionary bonus awards, subject to further approval.  A70–71; A84–85; A112–17.  The Court has "cautioned that a plaintiff cannot 'evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document on which he relies in bringing suit] to the complaint or to incorporate it by reference.'" *Karmilowicz,* 494 F. App'x at 156 (alterations in original) (quoting *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir. 1991)).

F.3d 253, 264–65 (2d Cir. 1999) (stating employee's pay was a wage because it was "guaranteed under the Percentage Bonus formula to be a percentage of the revenue he generated, and was not left to [defendant's] discretion"); *Kellogg Partners,* 19 N.Y.3d at 16 (finding the employee's bonus was a wage because it "had been earned and was vested before he left his job" and "its payment was guaranteed and non-discretionary as a term and condition of his employment"); *Kolchins v. Evolution Markets, Inc.*, 128 A.D.3d 47, 64 (1st Dep't 2015) (stating there was a question of fact as to whether plaintiff's non-discretionary "production" bonus had vested prior to the plaintiff's termination).

### D.    None Of Mr. O'Grady's Remaining Arguments Saves His Claims

Mr. O'Grady advances a litany of other arguments designed to alter or avoid the plain import of his Employment Agreement.  Each argument fails.

*First,* Mr. O'Grady argues that the Guidelines are proper "extrinsic evidence" that "confirm[] the parties' intent to pay 18%" based on "promises" made to him during "contract negotiations."  O'Grady Br. at 17.  But the parties' intent is clear from the unambiguous terms of the written contract Mr. O'Grady signed.  A38.  Even the Guidelines themselves state that they are "illustrative" only and that Mr. O'Grady's bonus will at all times remain subject to the terms of the Employment Agreement.  A41, A98.  *See Namad,* 74 N.Y.2d at 753 ("Parol evidence is inadmissible if a contract is clear on its face and sufficient alone to

20

divine the intent of the parties.") (citing 4 Williston, Contracts §§ 631, 632A, at 974, 985–986 (3d ed. 1961)).[7]

Moreover, Section 21 of the Employment Agreement states that its terms represent the "sole and entire understanding" between Mr. O'Grady and BlueCrest; that these terms "supersede[] all prior or contemporaneous understandings, agreements or negotiations" between the parties; and that Mr. O'Grady "acknowledge[s] and agree[s] that the Company has made no representations to [him] regarding the kind, character or existence of work or the compensation that [he] will receive for such work other than as set forth in this Agreement." A37. Here, again, the parties' intent is clear and "oral promises made to O'Grady prior to entering the Agreement are insufficient to modify the express terms[.]" A204 (citing *Marine Midland Bank S. v. Thurlow*, 53 N.Y.2d 381, 387 (1981) ("[W]here the parties have reduced their agreement to an integrated writing, the parol evidence rule operates to exclude evidence of all prior or contemporaneous

---

[7] To avoid any doubt as to the parties' intent, Section 5.4 of the Employment Agreement states that upon termination for any reason, Mr. O'Grady "was entitled to receive [his] *Base Salary* . . . accrued, but unpaid, through [his] termination date." A31 (emphasis added). Mr. O'Grady's "Base Salary" is expressly defined as $250,000 per year; it says nothing about a bonus, much less the $1.2 million Mr. O'Grady claims he is owed. A30. *See Namad,* 74 N.Y.2d at 543 (rejecting plaintiff's argument that the bonus clause entitled him to a bonus payment of $170,000, stating "parties would be expected to make reference to such a large sum of money in the agreement with particularity").

21

negotiations between the parties offered to contradict or modify the terms of their writing.")).

*Second*, Mr. O'Grady contends that BlueCrest's "promise" to pay him a bonus pursuant to the Guidelines was "ratified" by a single bonus payment allegedly paid to him for year-end 2013. O'Grady Br. at 17–20. Although not entirely clear, Mr. O'Grady appears to assert that this single bonus payment transformed the Guidelines into an "enforceable contract" that "governs" payment of his bonus. O'Grady Br. at 14–15, 19. But the Guidelines are not a contract and in no way "govern" his bonus payments. Indeed, the Guidelines make clear they are "illustrative only" and "[t]he rights of all employees . . . will remain at all times strictly subject to review and approval in accordance with the terms of the applicable employment agreement . . . which has neither been varied nor modified by anything set out herein." A40, A98. *Accord Kaplan*, 298 A.D.2d at 111 (employee handbook "clearly stated that its terms alone would govern the employment relationship and noting the employee signature indicated that he understood the terms").

*Third,* Mr. O'Grady asserts that the Employment Agreement was modified, although it is unclear on what basis, if any, this assertion rests. O'Grady Br. at 19–20. On the one hand, Mr. O'Grady appears to acknowledge that the Employment Agreement required written modification. *Id.* at 20; *see also* A38 ("This

Agreement may be amended or modified only by a written instrument signed by both Parties."). Yet, on the other hand, Mr. O'Grady argues that the parties' "course of conduct"—referring to his single bonus payment—evidenced a "meeting of the minds sufficient to form an enforceable contract." O'Grady Br. at 19. The very same single bonus payment then purportedly ratified "such" modification, presumably referring to modification of the Employment Agreement. O'Grady Br. at 20. This argument suffers from multiple flaws.

As an initial matter, Mr. O'Grady's Complaint does not allege that the Employment Agreement was modified at all, whether through "ratification" or otherwise. To successfully plead that the Employment Agreement was modified, Mr. O'Grady would have had to allege "each element requisite to the formulation of a contract, including mutual assent to its terms." *Beacon Terminal Corp. v. Chemprene, Inc.*, 75 A.D.2d 350, 354 (2d Dep't 1980) ("Fundamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms."). The Guidelines themselves "explicitly state that they are 'illustrative' and that the 'rights of all employees . . . will remain at all times strictly subject to review and approval in accordance with terms of the applicable employment agreement . . . which has neither been varied nor modified by anything set out herein." A203; *see also* A41,

A98.  There cannot possibly have been the requisite "meeting of the minds" to modify the Employment Agreement when even the Guidelines state the contrary.

In addition, the parties' alleged "course of conduct"—BlueCrest's single bonus payment to Mr. O'Grady—"is entirely consistent with the express language of the Agreement and in no way modifies the term that bonus awards are subject to BlueCrest's sole and absolute discretion."  A201 (citing *Namad*, 74 N.Y.2d at 753), and *Brennan v. J.P. Morgan Secs., Inc.*, 7 Misc. 3d 1013(A), 2004 WL 3314910, at *3 (N.Y. Sup. Ct. 2004) ("[T]he fact that an employee receives bonuses throughout an employment relationship does not vitiate the employer's right to retain full discretion in determining the amount, if any, of an employee's bonus.").  "Any contrary interpretation would nullify the contractual term [in the Employment Agreement]," and Mr. O'Grady's "course of conduct argument is therefore baseless."  A204.

Finally, even if the Employment Agreement had been modified as Mr. O'Grady suggests (it was not), his claims would still fail because active employment on the date of payment was a condition to receiving a bonus.  A30. As Mr. O'Grady admittedly cannot satisfy this condition, his arguments are irrelevant and his claims must fail.  *See Bayer v. Oxford Univ. Press,* 270 A.D. 586, 588 (1st Dep't 1946) ("Since plaintiff was not in the active employ of the defendant on March 15, 1944, as required by the bonus plan adopted by the

24

defendant, he acquired no bonus rights."); *see also* Fed. R. Civ. P. 9(c) (requiring a plaintiff to allege that "all conditions precedent have occurred or been performed").

## II. THE DISTRICT COURT CORRECTLY FOUND THAT MR. O'GRADY'S EMPLOYMENT AGREEMENT BARS HIS CLAIMS FOR SEVERANCE PAY

The District Court correctly held that the Employment Agreement bars Mr. O'Grady's claims for a severance payment. Section 5.4 of the Employment Agreement states that in the event Mr. O'Grady is terminated without cause, as he alleges, BlueCrest may "in its absolute discretion, terminate [his] employment immediately . . . and make a lump sum payment equivalent to [his] Base Salary through the end of the [one month] notice period . . . provided that [he] execute[s] a valid and irrevocable release agreement in a form acceptable to the Company." A205; *see also* A31. Because Mr. O'Grady does not allege that he signed a release, as required by Section 5.4, his claim for a severance payment fails.[8]

Mr. O'Grady relies on cases outside of the employment context to argue that the "prevention doctrine" excused this condition because BlueCrest somehow

---

[8] The District Court noted: "The fact that O'Grady did not receive a release is entirely consistent with defendant's position that O'Grady was terminated for cause, as no severance payment—and therefore no release—is required pursuant to section 5.2 of the Agreement. Nonetheless, as set forth above, the Court accepts the truth of plaintiff's allegation that he was terminated without cause for purposes of this motion." A206.

"stymied" his ability to sign a release. O'Grady Br. at 23. "But there is not a single allegation in the complaint that refers to a release, let alone any fact that would support an allegation that BlueCrest frustrated O'Grady's ability to sign one." A206. Mr. O'Grady "may not use an opposition to a motion to dismiss" (or this appeal) to cure his plainly defective pleading. A206 (citing *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998)).

Tellingly, at oral argument in the District Court, when Judge Stein asked whether Mr. O'Grady had a factual basis to support his argument that BlueCrest "stymied" his ability to sign a release such that he should be given leave to replead, Mr. O'Grady's counsel conceded that he did not. A188–189; *see also* A206 (stating that because Mr. O'Grady "failed to offer any specific factual allegations to substantiate his frustration argument, any amendment 'could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)'" (quoting *Lucente v. Int'l Bus. Mach. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002) and citing *In re Bankers Trust Co.,* 450 F.3d 121, 128 & n. 4 (2d Cir. 2006) ("Where a promisor has no duty to bring about the condition precedent to his promise," the "promisor's frustration of the occurrence of the condition," by passive conduct, does not occasion a waiver of the condition.)).[9]

---

[9]  Mr. O'Grady has not challenged the District Court's dismissal of his other claims, *see* A207–210, and has thus waived his right to do so. *See, e.g.*, *Tischmann*

26

## **CONCLUSION**

The District Court's judgment should be affirmed.


DATED:  New York, New York          QUINN EMANUEL URQUHART &
         December 4,  2015          SULLIVAN, LLP



By: */s/ Maya D. Cater*
      Maya D. Cater
      51 Madison Avenue, 22nd Floor
      New York, New York  10010
      (212) 849-7000
      mayacater@quinnemanuel.com

      Anthony P. Alden (admission pending)
      865 S. Figueroa Street, 10th Floor
      Los Angeles, California 90017
      (213) 443-3000
      anthonyalden@quinnemanuel.com

      *Attorneys for Defendant-Appellee*

---

*v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 n. 4 (2d Cir. 1998) (argument waived because the appellant did not raise it in his opening brief) (citations omitted).

27

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with Fed. R. App. P. 32(a)(7)(B)(i), because it contains 6,218 words (according to the Microsoft Word 2013 word-count function), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.


*/s/ Maya D. Cater*
Maya D. Cater